**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT J. SCARCELLE and SHARON SCARCELLE,** *H/W*, | **CIVIL ACTION** |
| Plaintiffs, | **NO. 23-2051-KSM** |
| *v.* | |
| **CARDO WINDOWS, INC.,** *d/b/a Castle Windows*, et al., | |
| Defendants. | |

**MEMORANDUM**

Marston, J.                                                    January 11, 2024

Plaintiffs Robert and Sharon Scarcelle bring claims for negligence, breach of contract, and violations of Pennsylvania's Uniform Trade Practices and Consumer Protection Law (the "UTPCPL") against the contractor and subcontractor that removed and replaced the windows on their home, Defendant Cardo Windows, Inc., doing business as Castle Windows ("Castle Windows"), and Defendant Kinger Construction, LLC, respectively.  (Doc. No. 4 at 6–24.) Castle Windows moves to dismiss the Complaint and compel all parties to arbitration per the terms of its respective contracts with the Scarcelles and Kinger Construction.  (*See* Doc. No. 8.) The Scarcelles have agreed to attend arbitration so long as Kinger Construction also agrees to attend.  (*See id.* at 8.)  Kinger Construction, however, opposes the motion to compel this case to arbitration.  (*See* Doc. Nos. 14, 17.)  For the reasons discussed below, the motion is granted.

I.       **BACKGROUND**

A.       **The Relevant Agreements**

In 2016, the Scarcelles hired Castle Windows to remove and replace multiple windows in

their home, including a window in their master bedroom.  (Doc. No. 8-3; *see also* Doc. No. 8-2 at ¶ 7.)  The contract between the Scarcelles and Castle Windows (the "Service Contract") includes an agreement to arbitrate any disputes arising out of the contract:

> As a material aspect of the consideration for this Agreement, [the parties] agree to binding arbitration for any claim, dispute, or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to this Agreement and the purchases and products provided for by it, including but not limited to solicitation and sales issues, privacy issues, and terms of use issues.

(Doc. No. 8-3 at ¶ 9.)

Castle Windows, in turn, hired Kinger Construction as a subcontractor for the Scarcelles' project.  (Doc. No. 15-1.)  A prior subcontract between Castle Windows and Kinger Construction (the "2011 Subcontractor Agreement"), states Kinger Construction is bound to the terms of Castle Windows's agreements with customers, like the Scarcelles:

> In case of any dispute between [Castle Windows] and [Kinger Construction], due to any Owner Claims, any act or omission, or involving the Contract Documents, [Kinger Construction] agrees to the same extent that [Castle Windows] is bound to Owner, to be bound by the terms of the Contract Documents; and by any and all preliminary and final decisions or determinations made thereunder by the party, board, or court so authorized in the Contract Documents or by law, whether or not the [Kinger Construction] is a party to those proceedings.

(Doc. No. 15-1 at ¶ 9.a.)[1]  The 2011 Subcontractor Agreement is a form contract with numerous blank spots for the parties to fill in, including, among other things, their names, the date of signing, and the date of termination.  (Doc. No. 15-1.)  Although representatives of each company signed the agreement, and Kinger Construction's representative initialed each page of

---

[1] Castle Windows initially relied on a subcontract between it and Kinger Construction that was signed in 2019.  (*See* Doc. No. 8-4.)  Castle Windows agrees, however, that the 2019 contract is immaterial to this dispute, which involves work completed in 2016.  (*See* Doc. No. 15 at 2 (arguing that the 2011 Subcontractor Agreement, not the 2019 contract, governs this dispute).)

the agreement, neither party filled in these blank portions.  (*Id.*)

### B.    The Alleged Damages

In June 2021, years after the windows were installed, the Scarcelles noticed dampness in the master bedroom, and reported their concerns to their home insurance carrier.  (Doc. No. 8 at ¶¶ 11–12.)  An inspector hired by the insurance carrier inspected the home and issued a report on August 20, 2021, which found that the window in the master bedroom had been incorrectly installed, allowing water to seep in around the window, down the wall, and around a patio door on a lower level of the home.  (*Id.* at ¶¶ 15, 17, 18.)  According to the Scarcelles, this caused extensive water damage in their home, and as a result, "black mold permeated the entire property," causing severe health problems for the Scarcelles.  (*Id.* at ¶¶ 20–22.)

### C.    Procedural History

On March 20, 2023, the Scarcelles filed their Complaint against Castle Windows and Kinger Construction in the Court of Common Pleas for Philadelphia County.  (Doc. No. 4 at 6.)  The Complaint asserts six counts against each Defendant:  (1) negligence, (2) respondeat superior, (3) agency, (4) violations of the UTPCPL, (5) breach of contract, and (6) interest.  (*Id.* at 16–24.)  On May 30, 2023, Castle Windows, with Kinger Construction's consent, removed the action to this Court.  (*See* Doc. No. 1.)  One month later, Castle Windows filed the pending motion to dismiss and to compel this case to arbitration.  (Doc. No. 8.)  The Scarcelles do not oppose the motion to compel, so long as all three parties are compelled to arbitration.  (Doc. No. 8 at 8.)  Kinger Construction, however, opposes the motion, arguing that the 2011 Subcontractor Agreement between it and Castle Windows is not enforceable under Pennsylvania law.  (*See* Doc. No. 17.)

## II.    LEGAL STANDARD

When deciding a motion to compel arbitration, a court must first determine the applicable

standard of review:  the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard under Federal Rule of Civil Procedure 56.  *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013); *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017).  "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  *Guidotti*, 716 F.3d at 776.  On the other hand, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the [opposing party] has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability," after which the court should consider the motion under the Rule 56 summary judgment standard.  *Id.*; *see also Healthplan CRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 316 (W.D. Pa. 2020) (If "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did, then resort to discovery and Rule 56 is proper." (cleaned up)).  "In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate . . . that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA [Federal Arbitration Act] envisions."  *Guidotti*, 716 F.3d at 776 (cleaned up).

Castle Windows argues that the Rule 12(b)(6) standard governs its motion because it relies solely on the allegations in the Complaint and its contracts with the Scarcelles and Kinger

Construction.  (Doc. No. 8 at 4–5.)  Kinger Construction initially argued that the summary judgment standard applies because "there exists a material question of fact related to Kinger Construction's agreement to arbitrate."  (Doc. No. 14 at 3 (noting that the subcontract attached to Castle Windows's initial motion to compel arbitration is dated for 2019).)  Specifically, Kinger Construction asserts that there is "a serious question of fact as to whether . . . there was a valid subcontractor agreement in effect at the time which would subject Kinger Construction to arbitration."  (*Id.*)[2]  In response, Castle Windows submitted a copy of the parties' 2011 Subcontractor Agreement, which it argues was in effect in 2016 when the Scarcelle project was completed.  (*See* Doc. No. 15-1.)

Here, the Court concludes that the Rule 12(b)(6) standard governs because the parties rely solely on the allegations in the Complaint and the terms of the relevant contracts, which are incorporated into the Complaint and attached to Castle Windows's motion papers.  (*See* Doc. No. 4 at ¶¶ 8–9 (the Scarcelles alleging in the Complaint that Castle Windows and Kinger Construction negligently replaced the windows in their home "in accordance with the contract and/or written agreement with Plaintiffs"); *id.* at p. 19 (bringing claims for agency and arguing that the "contractors, subcontractors, agents . . . who inspected, replaced, removed, and installed the windows in the master bedroom of Plaintiffs' home . . . were the agents of Defendants"); *id.* at p. 23 (bringing claims for breach of contract)); *see also Guidotti*, 716 F.3d at 773–74 ("Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or document relied upon in the complaint), the FAA would favor resolving a motion to compel

---

[2] Kinger Construction also argues that there is a material question of fact about "whether Kinger Construction was involved with the installation of Plaintiffs' windows in 2016."  (Doc. No. 14 at 2–3.) But this issue goes to the merits of Plaintiffs' claims and not to whether those claims are subject to binding arbitration.

arbitration under a motion to dismiss standard without the inherent delay of discovery." (cleaned up)); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (cleaned up and emphasis added)).

Kinger Construction has not shown that the Complaint and supporting documents are unclear regarding the agreement to arbitrate, nor has Kinger responded with additional *facts* sufficient to place the relevant contractual provisions in issue arguing instead that the 2011 Subcontractor Agreement is not enforceable as a matter of law.  (Doc. No. 17 at 1); *see Zabokritsky v. JetSmarter, Inc.*, Civil Action No. 19-273, 2019 WL 2563738, at *2 (E.D. Pa. June 20, 2019) ("Where the plaintiff fails to respond to a motion to compel arbitration with additional *facts* sufficient to place the agreement to arbitrate in issue, the motion is considered under a Rule 12(b)(6) standard." (cleaned up and emphasis added)); *see also Checchia v. SoLo Funds*, Civil Action No. 23-444-KSM, 2023 WL 3868369, at *5 (E.D. Pa. June 7, 2023) ("Here, the Court concludes that the Rule 12(b)(6) standard governs because SoLo attached its Terms, which included an arbitration provision, to its motion to compel arbitration, as well as an affidavit explaining that a user must check off a box agreeing to the Terms and Conditions before creating a SoLo account, and Checchia failed to respond with additional facts sufficient to place the arbitration provision in issue."); *Parker v. Briad Wenco, LLC*, Civil Action No. 18-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("If a party attaches an authentic arbitration agreement to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional *facts* sufficient to

place the agreement to arbitrate in issue." (cleaned up and emphasis added)); *cf.*

*HealthplanCRM, LLC*, 458 F. Supp. 3d at 317 (applying Rule 12(b)(6) standard where the party

opposing the motion to compel had "not presented evidence or otherwise identified any relevant

category of information outside the record requiring the Court to pierce the pleadings in order to

determine whether a valid arbitration agreement exist[ed]").

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)

is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to

relief." *Guidotti*, 716 F.3d at 772. "[I]f, accepting all factual allegations as true and construing

the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not

entitled to relief under any reasonable reading of the complaint," then the case should be

dismissed under Rule 12(b)(6). *Id.*; *cf. id.* at 777 ("Under the Rule 12(b)(6) standard, there

would be no reading of the complaint, no matter how friendly to [the plaintiff], that could rightly

relieve her of the arbitration provision in the Account Agreement[.]").

## III.    DISCUSSION

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the

FAA, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular

dispute falls within the scope of that valid agreement." *Kirleis v. Dickie, McCamey & Chilcote,*

*P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *see also Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313

(3d Cir. 2019). Here, the parties do not dispute that there is a valid arbitration agreement in the

Service Contract between the Scarcelles and Castle Windows. Instead, the relevant question is

whether the 2011 Subcontractor Agreement between Castle Windows and Kinger Construction is

an enforceable contract under Pennsylvania law, and if it is, whether that agreement renders

Kinger Construction subject to the arbitration agreement in the Service Contract.

### A.    A Valid Agreement

"To determine if there is a valid arbitration agreement, a court must 'apply ordinary state-law principles that govern the formation of contracts.'" *Hrapczynski v. Bristlecone, Inc.*, Civil Action No. 20-cv-06014, 2021 WL 3209852, at *3 (E.D. Pa. July 29, 2021) (quoting *James v. Glob. TelLink Corp*, 852 F.3d 262, 265 (3d Cir. 2017)).  In Pennsylvania,[3] "[t]o establish the existence of an agreement, one must show that:  (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration." *Universal Atl. Sys., Inc. v. Boston Market Corp.*, Civil Action No. 20-5291, 2022 WL 13829825, at *6 (E.D. Pa. Oct. 21, 2022) (quoting *Redick v. Kraft, Inc.*, 745 F. Supp. 296, 300 (E.D. Pa. 1990)).  "With respect to the second element—sufficiently definite terms—Pennsylvania has adopted the Restatement (Second) of Contracts." *Id.* (citing *Reed v. Pittsburgh Bd. of Pub. Educ.*, 862 A.2d 131, 135 (Pa. Commw. Ct. 2004)).  Section 33 of the Restatement provides:

> (1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

> (3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

Restatement (Second) of Contracts § 33 (1981).

---

[3] Although both Castle Windows and Kinger Construction are New Jersey entities, neither argues that New Jersey law governs this dispute, relying instead on Pennsylvania cases and principles.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("[P]arties may waive choice-of-law issues."); *cf. Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 n.2 (3d Cir. 2007) ("Because the parties only argued the choice-of-law issue with respect to New York and Pennsylvania, we will not consider Texas in our choice-of-law analysis.").

Here, Kinger argues that the 2011 Subcontractor Agreement does not have sufficiently definite terms because it fails, in the body of the contract, to identify the relevant parties, the date the agreement was signed, and its duration. (Doc. No. 17 at 1.)  The first two arguments are red herrings.  Although the parties failed to fill in blanks that specify which of them is the "Contractor" and which is the "Subcontractor," there is no real dispute that Castle Windows and Kinger Construction are the parties to the agreement.  After all, the agreement was signed by representatives of each company, with Castle Windows's representative signing the agreement under the line for "Contractor" and "Kinger Constructor" signing under the line for "Subcontractor." (Doc. No. 15-1 at 6.)[4]  Neither does the failure to fill in the blank for "date" render the contract unenforceable, especially when underneath their signatures, the parties dated the contract for April 5, 2011.  (*Id.*); *see Rossmassler v. Spielberger*, 112 A. 876, 880 (Pa. 1921) (explaining that Pennsylvania "does not favor, but leans against, the destruction of contracts because of uncertainty. . . .  Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves."); *Kirk v. Brentwood Manor Homes, Inc.*, 159 A.2d 48, 51 (Pa. Super. Ct. 1960) (same); *Latour v. Davis*, No. 99 CV 1162, 2000 WL 34201489, at *2 (Pa. Ct. Comm. Pl. Mar. 10, 2000) (same).

That leaves Kinger Construction's argument that the 2011 Subcontractor Agreement is

---

[4] Although Kinger Construction's representative signed *the addendum* to the 2011 Subcontractor Agreement under the "Contractor" line instead of the "Subcontractor" line (Doc. No. 15-1 at 8), that does not render the entire agreement ambiguous.  As stated, this mistake appears in an addendum, not the main agreement, and the mistake is reasonable given that the signature lines are flipped from how they were in the main agreement.  (*Compare id.* at 6 (placing the "Subcontractor" signature line first), *with id.* at 8 (placing the "Contractor" signature line first).)  And regardless, the fact that Kinger Construction's representative may have signed in the wrong location does not reasonably suggest that he believed Kinger Construction was the "Contractor" under the 2011 Subcontractor Agreement or that the contract's terms are so ambiguous as to render the entire agreement unenforceable.

"ambiguous and unenforceable" because it lacks a termination date.  (Doc. No. 17 at 1.)

Specifically, Kinger takes issue with the parties' failure to fill in a blank left in the termination

provision:  "The term (hereinafter "Term") of this Subcontract shall be (  ) year(s) from the date

of its execution unless terminated by the Contractor earlier in accordance with the Subcontract."

(Doc. No. 15-1 at ¶ 1.c.)

But the failure to specify the duration of an agreement, does not render the agreement

unenforceable.  *See Rossmassler*, 112 A. at 880 ("Appellant's error arises from assuming that,

because no period of duration is stated, the contract must be held void for uncertainty; whereas

the courts will always deduce the term from the nature of the subject-matter if it is at all possible

so to do.").  Instead, the "general rule is that when a contract provides that one party shall render

service to another, or shall act as his agent, . . . but does not specify a definite time or prescribe

conditions which shall determine the duration of the relation, the contract may be terminated by

either party at will," or the court shall construe the contract "as providing for a reasonable time

or some particular period inferred from the nature and circumstances of the undertaking."  *Price

v. Confair*, 79 A.2d 224, 226 (Pa. 1951) (emphases omitted); *see also Nova Chem., Inc. v.

Sekisui Plastics Co., Ltd.*, 579 F.3d 319, 326 (3d Cir. 2009) ("Pennsylvania courts hold that

where there is no express provision in the contract as to its duration or termination the intention

of the parties in that regard is determined from the surrounding circumstances and by an

application of a reasonable construction to the agreement as a whole." (cleaned up)).  In

construing the contract, the "intention of the parties" remains "the ultimate guide," and to

"ascertain that intention, the court may take into consideration the surrounding circumstances,

the situation of the parties, the objects they apparently have in view, and the nature of the

subject-matter of the agreement."  *Price*, 79 A.2d at 226; *Rosenfeld v. Rosenfeld*, 133 A.2d 829,

834 (Pa. 1957) ("When a contract is silent on its duration, parol evidence is always admissible to show the circumstances surrounding the execution of the contract, the situation of the parties, the objects they apparently had in view, and the nature of the subject matter of the agreement, to show whether the agreement was to endure for a reasonable time or for some particular period.").

Here, the "Whereas" clauses in the 2011 Subcontractor Agreement show that Castle Windows and Kinger Construction intended for the contract to govern the scope of their relationship across multiple construction projects, which were expected to occur "from time to time," thus avoiding the need to enter similar contracts before each project:

> WHEREAS, Contractor [Castle Windows] contemplates that from time to time it will enter into prime construction contracts with various clients ("Owner") for the performance of certain construction services with respect to certain projects (each "Project"); and
>
> WHEREAS, Contractor desires to enter into a master subcontract agreement with Subcontractor [Kinger Construction] whereby Contractor at its discretion may from time to time contract with Subcontractor, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;
>
> NOW, THEREFORE, in consideration of the mutual agreements herein expressed, the Parties contract, covenant, and agree as follows:
>
> . . . .
>
> [T]he Contractor may from time to time authorize the Subcontractor to perform certain construction services ("Work") for the Contractor pursuant to the Agreement but only upon the execution by Contractor and Subcontractor of a work order ("Work Order") in a form attached hereto as Exhibit D.

(Doc. No. 15-1 at 2.)

In addition, although the parties did not specify the number of years for which the agreement would govern, other provisions in the contract suggest it was terminable with written notice by either party. For example, the agreement provides that the "Contractor shall have the

11

right to terminate this Subcontract . . . in whole or part, for its own convenience . . . by providing Subcontractor with written notice of termination, to be effective upon receipt by Subcontractor." (*Id.* at ¶ 10; *see also id.* at ¶ 8.a. (allowing Contractor to terminate Agreement for cause with written notice); *id.* at ¶ 1.c. (allowing Subcontractor to refuse contract renewal with 90 days written notice).)

A reasonable reading of these provisions is that the 2011 Subcontractor Agreement was intended to continue for so long as Castle Windows hired Kinger Construction to work as a subcontractor on its projects or until either party terminated the agreement with written notice. *See Nova Chem., Inc.*, 579 F.3d at 326 ("Pennsylvania courts hold that where there is no express provision in the contract as to its duration or termination the intention of the parties in that regard is determined from the surrounding circumstances and by an application of a reasonable construction to the agreement as a whole." (cleaned up)).  Contrary to Kinger Construction's suggestion, the parties' failure to fill in the blank allowing for automatic termination of the agreement after a certain number of years *supports* a reading that the agreement continues for the duration of the parties' relationship or until such time as the parties choose to alter its terms by terminating the agreement with written notice or by entering a new contract.  *See Rossmassler*, 112 A. at 880  ("Apart from contracts which, from their inherent nature, imply a power of revocation, it would seem that the intention of the parties to an agreement that it should be perpetual and without limit as to duration could not be more properly expressed than by silence as to any time limit or power of revocation." (quotation marks omitted)).

This construction of the contract is not only consistent with the language of the agreement, but also with the subject matter of the contract—a master agreement meant to cover multiple individual projects for which Kinger Construction served as Castle Windows's

subcontractor. *See Nova Chem., Inc.*, 579 F.3d at 326–29 (interpreting Pennsylvania cases for the proposition that "the duration of a contract is to be determined based on its subject matter"); *Capitol Presort Servs., LLC v. XL Health Corp.*, Civil Action No. 1:13-CV-2287, 2014 WL 4467840, at *6 (M.D. Pa. Sept. 9, 2014) ("[W]hen a contract does not fix a definite term, courts sometimes construe the contract as providing for a reasonable time or some particular period inferred from the nature and circumstances of the undertaking." (quotation marks and citations omitted)); *see also Hawbaker v. Workers Compensation Appeal Bd.*, 159 A.3d 61, (Pa. Commw. Ct. 2017) (considering contract between roofing company and independent subcontractor and finding that at the time of the subcontractor's accident, he was covered by the contract because it was of "indefinite duration" such that the parties did not have to execute a new agreement every time the subcontractor worked on a job for the contractor).

Kinger Construction disputes this reading, citing the Pennsylvania Commonwealth Court's opinion in *Wyeth Pharmaceuticals, Inc. v. Borough of W. Chester* for the proposition that "Pennsylvania law disfavors perpetual contracts and, thus, requires a perpetual term to be expressed unequivocally." 126 A.3d 1055, 1064 (Pa. Commw. Ct. 2015). But *Wyeth* concerned a contract which one party wished to continue in perpetuity regardless of the other party's wish to terminate the agreement and regardless of a change in the parties' circumstances. *Id.* A brief discussion of *Wyeth* is helpful.

In that case, the parties entered a contract, under which the owner of a penicillin plant and other companies agreed to split the municipality's costs for updating and running a wastewater treatment plant. *Id.* at 1057–58. The costs of running the wastewater plant were divided into variable costs and fixed costs, with the variable costs being "based upon [each company's] volume and type of wastewater," and the fixed costs covering a pro rata share of the plant's

overhead costs for things like labor and administration.  *Id.* at 1058.  Sixteen years after entering

the agreement, the penicillin plant closed, and a year later, the site was completely

decommissioned.  *Id.*  With the plant's closure, the company's variable costs ceased, but the

municipality argued that the company was nevertheless required to continue paying fixed costs

indefinitely under the agreement.  *Id.*  The company initially obliged, paying the fixed costs for

an additional six years, until in 2011, it formally notified the municipality of its intention to cease

paying fixed costs and to terminate the agreement.  *Id.* at 1059.

       In reviewing the parties' contract, the Pennsylvania Court of Common Pleas noted that it

lacked a duration provision, and the court construed the agreement as continuing in perpetuity.

*Id.* at 1064.  On appeal, the Commonwealth Court reversed.  The appellate court explained that

"Pennsylvania law disfavors perpetual contracts and, thus, requires a perpetual term to be

expressed unequivocally."  *Id.*  Absent such a provision, the "general rule is that when a contract

provides that one party shall render service to another, . . . but does not specify a definite time or

prescribe conditions which shall determine the duration of the relationship, the contract may be

terminated by either party at will."  *Id.* at 1065 (quoting *Price*, 79 A.2d at 224).  And "in some

cases, the intent of the parties may establish that the contract should be "construed as providing

for a reasonable time."  *Id.* (quoting *Price*, 79 A.2d at 224).  Turning to the contract before it, the

appellate court "conclude[d] that the Agreement had a reasonable, not infinite, duration," and

"[a]s such, it was terminable at will by either party."  *Id*. at 1067; *see also Nova Chem., Inc.*, 579

F.3d at 326 (rejecting notion that license was "permanent" merely because the contract "failed to

explicitly fix a definite duration" for the license).

       As this discussion shows, *Wyeth* reinforces "[t]he principle that a contract without an

express duration clause endures for a reasonable period of time or is terminable at will."  *Wyeth*,

126 A.3d at 1065; *id.* at 1064 ("[A] contract for an indefinite period will be construed to be for a 'reasonable time or terminable at will unless the intention of the parties can be ascertained.'" (quoting *Major v. Flock Brewing Co.*, 2 Pa. D. & C.2d 496, 500 (Ct. Comm. Pl. 1954))). Applying that principle here, the Court holds that the 2011 Subcontractor Agreement was in effect for so long as Castle Windows hired Kinger Construction to work as a subcontractor on its projects or until either party terminated the agreement with written notice. Kinger Construction does not suggest that it terminated the agreement, and it concedes that it continued to work as a subcontractor for Castle Windows in 2016 when the Scarcelle project was completed. (Doc. No. 14 at 2 ("In or around 2016, Mr. Kinger acted as a subcontractor for a number of contractors, including Castle Windows.").)

Accordingly, the Court rejects Kinger Construction's argument that the 2011 Subcontractor Agreement is unenforceable because it fails to specify the duration of the parties' relationship. The contract was valid and enforceable, continuing for the duration of the parties' relationship or until such time as the parties choose to alter its terms by terminating the agreement with written notice or by entering a new contract.

### B. Scope of the Agreement

Having found that the 2011 Subcontractor Agreement was a valid and enforceable contract, and that it governed the relationship between Castle Windows and Kinger Construction in 2016, the Court next considers whether the parties' dispute is one that can be compelled to arbitration under the terms of that agreement.[5] *See Kirleis*, 560 F.3d at 160.

---

[5] Kinger Construction makes no argument as to this issue, and thus, the Court could find any argument on this front waived. (*See generally* Doc. Nos. 14, 17.) *See, e.g.*, *Breslow v. Carvana Co.*, No. 21-cv-4915-JMY, 2022 WL 18585319, at *1 n.1 (E.D. Pa. Aug. 1, 2022) ("[E]ven if the Court were to read his Response in the most favorable light, it would still fail because such conclusory and legally unsupported pleading constitutes waiver and/or abandonment of Plaintiff's argument against dismissal.") (collecting cases).

As discussed above, in the 2011 Subcontractor Agreement, Kinger Construction agreed to be bound to Castle Windows's contracts with "Owners," like the Scarcelles:

> In case of any dispute between [Castle Windows] and [Kinger Construction], due to any Owner Claims, any act or omission, or involving the Contract Documents, [Kinger Construction] agrees to the same extent that [Castle Windows] is bound to Owner, to be bound by the terms of the Contract Documents; and by any and all preliminary and final decisions or determinations made thereunder by the party, board, or court so authorized in the Contract Documents or by law, whether or not [Kinger Construction] is a party to those proceedings.

(Doc. No. 15-1 at ¶ 9.a.)[6] This provision means that Kinger Construction is bound, to the same extent as Castle Windows, to the terms of the Service Agreement, including the requirement that "any claim, dispute, or controversy . . . of any kind (whether in contract, tort or otherwise) arising out of or relating to [the Service Contract]" be submitted to "binding arbitration." (Doc. No. 8-3 at ¶ 9); *see John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 660–62 (3d Cir. 1986) (finding no error in the district court's conclusion that a clause in a subcontract—which provided that the "SUBCONTRACTOR shall be bound by all provisions of these documents and also by applicable provisions of the PRINCIPAL CONTRACT to which the contractor is bound and to the same extent"—bound the subcontractor to the arbitration clause in the principal contract); *J.D. Fegely, Inc. v. Kline Iron & Steel Co.*, Civ. A. No. 88-9467, 1989 WL 71549, at

---

[6] Although not discussed by either party, the Court notes that this provision appears more limited than Castle Windows has suggested. Notably, it states that Kinger Construction is bound to the terms of the Service Contract only to the same extent that Castle Windows is so bound. In other words, the provision suggests that to the extent *the Scarcelles* could compel Castle Windows to arbitration, they could also compel Kinger Construction. (*See* Doc. No. 15-1 at ¶ 9.a. (stating that Kinger Construction "agrees to the same extent that [Castle Windows] is bound to Owner, to be bound by the terms of the Contract Documents").) It does not, however, suggest that Castle Windows can compel Kinger Construction to arbitration simply because Castle Windows can compel the Scarcelles. This distinction is largely immaterial in this case, however, because it is clear that Castle Windows can compel the Scarcelles to arbitration, and the Scarcelles have stated that to the extent they are compelled to arbitration, Kinger Construction should also be so compelled.

*1 (E.D. Pa. June 27, 1989) ("In the case at bar, the arbitration clause in the subcontract is sufficiently broad to include arbitration of the plaintiff's claims and is incorporated by reference into the sub-subcontract.  Also, it is advantageous that one arbitration proceeding, pursuant to the principal contract, be held to resolve disputes involving owners, contractors, subcontractors and sub-subcontractors.  *Waldinger* fosters this policy by making the arbitration clause in the principal contract controlling where the subcontracts and sub-subcontracts incorporate the provisions of the principal contract."); *cf. Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3rd Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document would not result in surprise or hardship.").

As stated previously, the parties do not dispute that this case, which challenges the sufficiency of the work performed at the Scarcelles' home, falls within the scope of the Service Contract's broad arbitration provision.  Accordingly, the Court finds dismissal of claims in favor of arbitration appropriate as to all parties, including Kinger Construction.

**IV.    CONCLUSION**

The motion to dismiss and compel arbitration is granted.  An appropriate order follows.